UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RITA SMITH,

     Plaintiff,                     Case No. 17-cv-13032

v.                                 Paul D. Borman
                                   United States District Judge

WOODWARD DETROIT CVS, LLC,
AND CVS PHARMACY, INC.,

     Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT (ECF NO. 24)

This is a premises liability action. Plaintiff was shopping for back-to-college supplies with her granddaughter at the Defendant Woodward Detroit CVS, LLC ("CVS") when Plaintiff tripped and fell over a display cart, located near the check out lanes at the entrance/exit to the store, that held cases of bottled water. Defendant now moves for summary judgment, arguing that the large blue display cart was open and obvious and that there were no special aspects of the display cart that created a uniquely high likelihood of severe harm. The matter is fully briefed and the Court held a hearing on July 24, 2019. For the reasons that follow, the Court GRANTS the Defendants' motion for summary judgment.

# I.    BACKGROUND

On November 7, 2015, Rita Smith, a woman in her late eighties at the time of the incident, was shopping for back-to-school items  with her college-age granddaughter, Megan Trabalka Smith, at the CVS located in White Lake Township. Plaintiff testified that she was walking down the aisle and turned to go around the corner when her "feet bumped into" the display cart at the end of the aisle.  (ECF No. 30-3, Jan. 19, 2018 Deposition of Rita Smith, 34-35, 44, 52-53, PgID 402, 404, 406.) Plaintiff testified that the cart was "not in plain sight," but after she tripped and fell she was able to see the cart at the edge of the aisle.  (*Id*. at 54-55, PgID 407.)  Plaintiff testified that she was looking around the store but not looking at the ground.  She testified that if she had been looking at the ground, "maybe I wouldn't have stumbled over it."  (*Id*. at 56, PgID 407.)  Plaintiff testified that the cart protruded about a yard from the end of the aisle and if she had been approaching from the cashier end of the store, she would have been able to see the cart with water on it.  (*Id.* at 58, PgID 408.) Plaintiff testified that she immediately stood up and told the people who came to assist her that she was "fine" because she was embarrassed that she had been "so stupid as to fall over a cart."  (*Id*. at 60-61, PGID 408.)  She handed her credit card to her granddaughter so that she could check out and buy her items.  (*Id*. at 61, PgID 408.) While Plaintiff was handing the credit card to her granddaughter, the store manager

came and Plaintiff explained to him that she had tripped over the cart. (*Id*. at 62, PgID 409.) Plaintiff told the store manager that they should not have the cart there for seniors to trip over but she told him she was fine and refused medical assistance. (*Id*. at 66-67, PgID 410.) Plaintiff, who has been on the blood thinner Coumadin for many years after having a heart-valve replacement, suffered a large hematoma as a result of the fall, which she did not notice until later that day when she was at home. (*Id*. at 13, 34-35, 39, PgID 396, 402.) The hematoma had to be drained twice to remove all of the blood that formed, and Plaintiff claims a number of allegedly related disabling injuries to her back and legs, as well as depression, as a result of the fall, although she has not had any doctor diagnose these additional symptoms as related to the fall. (*Id*. at 19-20, 30, 34-38 PgID 398, 401-03.)

Plaintiff's granddaughter, Megan Smith, testified that she did not see her grandmother fall as she was some distance behind her in the store. (ECF No. 30-12, June 19, 2018 Deposition of Megan Smith, 13-14, PgID 631-32.) Ms. Smith described the cart as a "really low-level" cart that was blue in color. (*Id*. at 15, PgID 633.) Ms. Smith testified that the cart was butted up right against the end of the aisle and there was a case of water stacked on the cart at the end that was closest to the aisle end cap. (*Id.*) Ms. Smith did not know anything about the conversation that the Plaintiff had with the store manager and after Ms. Smith used the Plaintiff's credit

card to purchase the items, she and the Plaintiff left the store. (*Id*. at 22, PgID 639.) Ms. Smith testified that the cart was very low to the ground and there was only one case of water on it and it was hazardous to walk around. (*Id*. at 34, PgID 651.) After watching the video, Ms. Smith testified that in her opinion it was not obvious to someone coming around the corner of the aisle that the cart was there. (*Id*. at 36, PgID 653.)

Ms. Julianna Corvell was working the cash register at the CVS right in front of the display cart at the time that the Plaintiff fell. (ECF No. 24-3, Feb. 26, 2018 Deposition of Julianna Corvell 10, 17, PgID 291, 293.) Ms. Corvell described the display cart as a long cart with a tall handle on one end that was stacked with cases of water. (*Id*. at 24-25, PgID 294-95.) She testified that the cart was visible to anyone who was looking where they were going and that Plaintiff was looking in the opposite direction when she turned to come to the cash register and she tripped over the cart. (*Id*. at 31-32, PgID 296.)

Daniel Spell, the Store Manager who was on duty that day, recalled the Plaintiff tripping and falling on the water display on or around November 7, 2015. (ECF No. 24-3, April 5, 2018 Deposition of Daniel M. Spell 14, PgID 271.) Mr. Spell testified that this was the first incident he was aware of that someone fell in the CVS store since he began there in 2011. (*Id*. at 17-18, PgID 272.) Mr. Spell testified that the

water display cart is a permanent display that has wheels but does not move around the store and is always positioned in the same place by the cash register. (*Id.* at 23-24, PgID 273.) He testified that there were only two cases of water on the cart at the time that the Plaintiff fell and that the display cart was visible to any customer coming around the corner of the aisle even with only the two cases of water and the outermost end void of product. (*Id.*) Mr. Spell spoke to the Plaintiff after she fell and asked her several times if she needed medical help – she refused medical assistance and said she was fine and Mr. Spell filled out an incident report and called it into Gallagher Bassett's liability reporting line for CVS incidents. (*Id.* at 27-29, PgID 274-75.) Mr. Spell testified that the water cart has varying numbers of cases on it throughout the day because when cases are purchased the cart is not always immediately restocked. (*Id.* at 33-34, PgID 276.) Mr. Spell testified that regardless of how many cases of water are on the cart, the display cart is obvious to anyone watching where they are walking. (*Id.* at 34, PgID 276.) Mr. Spell described the cart as "bright blue" approximately three feet long and a foot and a half wide with a long flat base and a bright blue handle that extends up about three and a half feet and abuts up against the end of the end cap. He believed that the cart sits about six inches off the floor. Mr. Spell testified that the cart is a permanent piece of the end cap and does not move and that the distance around the cart has sufficient clearance to meet ADA standards and

does not pose any type of hazard.  (*Id.* at 42-43, PgID 278.)

Plaintiff does not dispute the authenticity of the photographs attached to Defendants' motion. (ECF No. 24-2.) Indeed Plaintiff attaches the same photographs, albeit in black and white, to her Response and describes the photographs in her Index of Exhibits as "Photos of CVS Blue Water Cart."  (ECF No. 30-4.)  The photographs depict a large cart on wheels that abuts an end cap at the end of an aisle with a three and a half foot high black handle situated up against the end cap.  (ECF No. 24-2, PgID 258.) The cart base is an obvious blue against a light grey floor and the cart extends laterally into the aisle, offset against the end cap, so that it is very visible to anyone walking down the aisle and toward the cart, as Plaintiff was in this case.  In looking at the second of the photographs, which depicts a front-facing view of the cart against the end-cap, it becomes clear that the cart is offset from the end cap so that customers can access the items on the end-of-aisle display.  (ECF No. 24-2, PgID 259.)  This location of the water display cart, protruding as it was into the aisle, actually made the cart more visible to someone coming down the aisle toward the entrance of the store and toward the check out area, as Plaintiff was in this case. The water display cart is also clearly visible to every shopper entering the store as it is located directly across from the entrance to the store.

The CCTV surveillance video depicts the blue cart as it appeared that day,

located in an open space directly across from the entrance to the store and just an aisle

down from the check out lanes. (ECF No. 27, Exhibit Video Filed in Traditional

Manner.) The cart was not fully stocked with water at the time and the photograph

depicts two cases of water stacked next to each other toward the handle-end of the cart

and an open space at the end of the cart where a case of water likely was removed for

purchase. The dark blue base of the cart is visible against the lighter grey flooring over

which the end of the cart protrudes.[1] Multiple other shoppers can be seen walking by

the cart from all different directions without incident. Specifically, at 1:15:16 a

woman can be seen walking right next to the end of the blue display cart and passing

by without a problem. At 1:15:38, Plaintiff can be seen coming around the corner of

the end of the aisle on which the cart was located. She passes by the rear aspect of the

cart but then cuts the corner too  sharply and appears to trip over the outer edge of the

cart. She falls forward onto her knees with her hands out in front of her and lands on

---

[1] The exact location of the cart with respect to the flooring as viewed from Plaintiff's
perspective that day is best seen in the photograph depicting the cart from the vantage
point of the Plaintiff as she walked down the aisle toward the cart and the check out
area. (ECF No. 24-2, PgID 258.) From the Plaintiff's perspective as she approached
the cart then, it is clear that the end of the blue water cart sits fully on the lighter grey
flooring at the front of the store. Although in the photograph the blue cart is more
fully stocked than it was when Plaintiff fell, the video demonstrates that the cart was
partially stocked at the time of Plaintiff's fall. Whether fully or partially stocked, the
evidence is clear that the cart was a permanent display and was never moved from its
position at the end of the aisle.

her hands and knees and stomach/chest area.  One of the cashiers and a shopper who was checking out move to help the Plaintiff stand up.  A man wearing an orange shirt and black pants then approaches to speak with the Plaintiff who is by then standing up. 1:16:17-36.  The Plaintiff then appears to be joined by her granddaughter and they appear to hold hands and walk behind the man in the orange shirt off screen.  Other shoppers proceed in and out of the store passing by the blue cart without any problem avoiding it.  At 1:19:14, a shopper is seen approaching the blue display cart from the very same aisle and direction as the Plaintiff, turning the same direction as the Plaintiff turned (toward the check out lanes) and clearly navigating around the end of the blue cart without incident.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). "'The central issue is whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). That evidence must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

## III.   ANALYSIS

Because this is a diversity action, the Court applies Michigan law "as decided by the Michigan Supreme Court." *Kessler v. Visteon*, 448 F.3d 326, 329-30 (6th Cir. 2006). "If the Michigan Supreme Court has not yet addressed the issue presented, we must predict how it would rule, by looking to all relevant data, including state appellate decisions." *Id*. at 330 (internal quotation marks and citation omitted). "[I]n all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Id*. (internal quotation marks and citations omitted).

"To establish a *prima facie* case of premises liability [under Michigan law], a plaintiff must establish that 1) the defendant owed the plaintiff a duty, 2) breach of that duty, 3) an injury proximately resulting from that breach, and 4) damages."

*Hollerbach v. Target Corp*., 443 F. App'x 936, 937-38 (6th Cir. 2011) (citing *Fultz v. Union–Commerce Assoc*., 470 Mich. 460, 463 (2004)) (alteration added). "In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516 (2001). A premises owner, however, owes no duty to protect a business invitee from or to warn of "open and obvious" dangers:

> [I]f the particular activity or condition creates a risk of harm *only* because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the conditions and realized its danger. On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions.

*Lugo*, 464 Mich. at 516-17 (quoting *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 611 (1995)) (emphasis in original).

A business guest is not without obligation and is required to exercise ordinary care when visiting a business premises. "Ordinary prudence demands that a view be taken of the place where one is about to step." *Jaworski v. Great Scott Supermarkets, Inc.*, 403 Mich. 689, 698 (1978) (quoting *Goodman v. Theatre Parking, Inc.*, 286 Mich. 80, 83 (1938)). "[I]f the particular activity or condition creates a risk of harm only because the invitee does not discover the condition or realize its danger, then the

11

open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger." *Bertrand*, 449 Mich. at 611.

"Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection. This is an *objective standard*, calling for an examination of 'the objective nature of the condition of the premises at issue.'" *Hoffner v. Lanctoe*, 492 Mich. 450, 461 (2012) (quoting *Lugo*, 464 Mich. at 523–524). *See also Kennedy v. Great Atlantic & Pacific Tea Co.*, 274 Mich. App. 710, 713 (2007) ("The test to determine if a danger is open and obvious is whether an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection. Because the test is objective, this Court looks not to whether a particular plaintiff should have known the condition was hazardous, but to whether a reasonable person in his or her position would have foreseen the danger.") (modification in original, internal citations and quotation marks omitted).

Under certain circumstances, even an open and obvious danger can be the basis for liability. "[A] premises possessor is not generally required to protect an invitee from open and obvious dangers, unless special aspects of a condition make even an open and obvious risk unreasonably dangerous, in which case the possessor must take reasonable steps to protect invitees from harm." *Watts v. Michigan Multi-King, Inc.*,

291 Mich. App. 98, 102 (2010). In the presence of "special aspects" that make even an obvious hazard unreasonably dangerous, the premises owner's duty is heightened:

> In sum, the general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk.

*Lugo*, 464 Mich. at 517. The "special aspects" exception has been interpreted to include two specific types of hazards that, though open and obvious, nonetheless require a heightened duty on the part of the premises owner: (1) those that are unavoidable (such as the only exit from the premises being covered with standing water); and (2) those that present a substantial risk of death or severe injury (such as a thirty foot deep pit in the middle of a parking lot). *Lugo*, 464 Mich. at 518. "In sum, only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine." *Id*. at 519. *See also Freeman v. Kmart Corp.*, No. 331224, 2017 WL 2463407, at *4 (Mich. Ct. App. June 6, 2017) ("[T]here are only 'two instances in which the special aspects of an open and obvious hazard could give rise to liability: when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*,' and 'neither a common condition nor an avoidable condition is uniquely dangerous.'") (quoting *Hoffner*, 492 Mich. At 463; *Lugo*, 464 Mich. at

517-20) (emphasis in original).

With respect to dangers that are open and obvious, "the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly 'special aspects' of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the 'special aspect' of the condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability." *Lugo*, 464 Mich. at 517-18. When considering whether the condition creates "special aspects," the inquiry must focus on the risk posed "*a priori*, that is before the incident involved in a particular case." *Id*. at 519 n. 2. "It would, for example, be inappropriate to conclude in a retrospective fashion that merely because a particular plaintiff, in fact, suffered harm or even severe harm, that the condition at issue in a case posed a uniquely high risk of severe injury." *Id*. Summary judgment is appropriate "where no reasonable person could conclude that the open and obvious condition at issue involved special aspects that presented an unreasonable risk to invitees." *Id*.

Defendant argues that the bright blue water display cart was open and obvious and that nothing about the display created a likelihood of severe harm bringing into play the special aspect exception to the open and obvious rule. It is somewhat

difficult to understand exactly what Plaintiff is arguing in her response brief. She apparently concedes that the display cart was open and obvious because she appears to argue that the absence of a full compliment of water cases at the far end of the display cart created a "special aspect." Because the issue of special aspects only comes into the analysis as an exception to the limitation of liability for open an obvious danger, it would follow that Plaintiff is conceding that the cart was open and obvious. After citing Michigan case law discussing the special aspects exception to the open and obvious doctrine, Plaintiff concludes:

> The issue therefore becomes "whether there is evidence that creates a genuine issue of material fact regarding whether there are truly 'special aspects' of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm.' *Lugo*, *supra*, at 517. The issue in this particular case is whether the cart upon which Rita Smith tripped and fell was abnormally dangerous.

(Pl.'s Resp. 17-18, PgID 379-80.)

Plaintiff states in her response that "special aspects existed such that the open and obvious defective condition causing her injury was effectively unavoidable." (*Id.* at 17, PgID 379.) Plaintiff then suggests that the "unusual occurrence" of the partially-stocked water display leaving the outermost edge of the display cart empty of cases of water created an "abnormally dangerous" condition. (*Id.* at 19, PgID 381.) Plaintiff then proceeds to rely on *Clark v. Kmart*, 465 Mich. 416 (2001), a case

principally addressing the issue of constructive notice and having nothing to do with the special aspects doctrine, and *Price v. Kroger Co. of Michigan*, 284 Mich. App. 496 (2009), a case analyzing whether a wire protruding from a display bin holding candy at the checkout aisle was open and obvious. Neither *Clark* or *Price* has anything to do with the special aspects doctrine. Indeed the phrase "special aspect" does not even appear in either case. Thus, while on the one hand Plaintiff appears to concede that the water display cart was open and obvious and argues that the special aspects exception applies, on the other hand she cites and discusses cases analyzing whether certain conditions are open and obvious, and analogizes to those cases. Given this confusion, the Court finds it is best to analyze the issues separately under the appropriate controlling law: (1) whether the water display cart presented an open and obvious danger; and (2) if open and obvious, did the water display cart involve special aspects that created an unusually high risk of severe harm or was risk posed by the water display cart unavoidable?

In analyzing whether the display cart was an open and obvious danger, the Court looks to a number of Michigan cases, both published and unpublished, that have spoken to the open and obvious nature of these types of "end cap" displays. While each premises liability case must be decided in the context of its own very specific factual setting, tripping or falling over store displays such as this blue water

cart has routinely been found by Michigan courts to have been an occurrence that a casual observer in a retail setting exercising reasonable care would have appreciated and avoided. For example, in *Quinto v. Woodward CVS, LLC*, 305 Mich. App. 73 (2014), the Michigan Court Appeals found, on very similar facts, that a floor-level platform that was protruding out the end of an aisle, which was intended to hold a display of cases of pop but was empty on that particular day, was open and obvious. The Court of Appeals summarized the facts in *Quinto* as follows:

> Plaintiff was shopping in defendant's retail store. She walked down a display aisle and began to turn the corner at the end of the aisle. Projecting from the end of the aisle was a very low platform used to support heavy displays of items such as high stacks of cases of pop. The platform was not affixed to the floor and defendant does not dispute that it served no function on that day, because it was not needed and could easily have been removed. In her statement given to defendant shortly after the incident, plaintiff stated that when she reached the end of the aisle, she was "looking at cereal and turned the corner" and then "tripped over the end cap display," i.e., the floor-level platform. Plaintiff conceded that she was not looking down at the floor while walking.

305 Mich. App. at 75 (footnote omitted). The Court of Appeals affirmed the trial court's grant of summary disposition to CVS finding that the display was open and obvious.[2]

---

[2]The panel in *Quinto*, while affirming the district court's grant of summary judgment to CVS finding the condition was open and obvious, did so because it was constrained by precedent, specifically *Kennedy v. Great Atlantic & Pacific Tea Co.*, 274 Mich. App. 710 (2007) (holding that crushed grapes on the aisle floor of a supermarket was an open and obvious danger). The panel suggested that some variant of the open and

Similarly, in *Freeman*, *supra*, the plaintiff was walking down an aisle of the store, "turned left at the end of the aisle, and immediately fell across an empty end cap base . . . ." 2017 WL 2463407, at *1. Plaintiff filed suit against Kmart, claiming that Kmart failed to remove the end cap when it was empty, failed to ensure a contrast in color between the store floor and the base of the end cap, and failed to restock merchandise on the empty end cap or to place a tall object around the edges of the empty end cap. *Id*. The Court of Appeals concluded that the trial court properly

---

obvious doctrine should apply in a retail store where customers are likely to be so distracted by advertising created to attract their attention that they cannot reasonably be expected to be aware of the ground around their feet. But the majority acknowledged that they were bound by *Kennedy* to affirm the trial court's grant of summary disposition to CVS. 305 Mich. App. At 83. The majority of the Court of Appeals suggested that a special panel be convened to address the issue, but the Michigan Supreme Court declined to convene a special panel. (*See* ECF No. 24-4, Def.'s Mot. Ex. K, May 23, 2014 Order of the Michigan Supreme Court that a special panel *not be convened* to resolve the conflict with *Kennedy*.) The Sixth Circuit also has expressly acknowledged that the open and obvious doctrine applies under Michigan law in the context of a retail environment. *Wimberly v. Forman Mills, Inc.*, 574 F. App'x 621 (6th Cir. 2014) (mem) (observing that *Kennedy* required the court to apply the open and obvious doctrine to find no liability in the case of a hazard presented by clear plastic hangar on the floor of a retail department store); *Cudney v. Sears & Roebuck & Co.*, 21 F. App'x 424, 429-30 (6th Cir. 2001) (finding tripping hazard created by the support leg of a clothing display rack in a retail department store was open and obvious under Michigan law); *Foust v. Home Depot USA, Inc.*, 166 F. Supp. 3d 881, 888-89 (E.D. Mich. 2016) (acknowledging, as the Sixth Circuit did in *Wimberly* and *Cudney*, that under Michigan law there was no "customer distraction" exception to the open and obvious rule in the retail environment, but finding a question of fact as to whether metal strips protruding from a conversion display cart were open and obvious).

granted summary disposition to the Kmart because the end cap base was an open and obvious condition that Plaintiff should have observed and avoided. *Id*. at *3. The Court reasoned that there was sufficient contrast between the color of the base and the color of the floor to make the base observable on casual inspection, and noted that the base was "rather large," standing nine inches high, 36 inches wide, and 26 inches deep. *Id*. at *3. The court also noted that the photographs depicted an "end cap base [that] would have been visible to an average customer as she approached the end of the aisle, if she were to casually inspect the area." *Id*. The court dismissed plaintiff's contention that an ordinary shopper is looking straight ahead and not down at the floor, observing "the established principle underlying the open and obvious doctrine that a reasonably prudent person will look where she is going, observe an open and obvious condition in front of her, and take appropriate measures for her own safety." *Id*. The court concluded that "[b]ecause the end cap base created a risk of harm solely because plaintiff failed to notice it, and there is no evidence that she could not have discovered it and realized its danger . . . reasonable minds could not disagree on the issue of whether an average individual would have noticed the end cap base *upon casual inspection*." *Id*. at 3-4 (emphasis in original). The court also concluded that the trial court properly found "no genuine issue of material fact as to whether the end cap included a special aspect that made it unreasonably dangerous." *Id*. at *4. The

court observed that "there are only 'two instances in which the special aspects of an open and obvious hazard could give rise to liability: when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*.'" *Id*. (quoting *Hoffner*, 492 Mich. at 463; *Lugo*, 464 Mich. at 517-20) (emphasis in original). The court held that "[f]alling a short distance to the ground does not involve an especially high likelihood of severe injury or death sufficient to remove a condition from the scope of the open and obvious doctrine." (Citing *Lugo*, 464 Mich. at 519-20.) The court further found that "plaintiff easily could have avoided the end cap by simply walking around it. Thus, the condition was not effectively unavoidable." *Id*.

Similarly, in *LaFontaine v. Big Lots Stores, Inc.*, No. 300306, 2011 WL 6757480 (Mich. Ct. App. Dec. 22, 2011), the Michigan Court of Appeals affirmed the trial court's grant of summary disposition to the defendant shopkeeper, where the plaintiff had turned at the end of an aisle and tripped over a three-foot-square wooden pallet that was protruding about three feet into the adjacent aisle. *Id*. at *1. The Court of Appeals noted that the pallet contrasted with the color of the store floor and also found it important that plaintiff testified that she did not see the pallet until she hit it but that she could have walked around it had she seen it. *Id*. The Court of Appeals explained:

> The gravamen of plaintiff's argument is that she provided unrebutted
> testimony that she did not see the pallet and could not have seen the

pallet; therefore, she contends, the pallet could not have been open and obvious. However, openness and obviousness is evaluated from an objective standard, "and the inquiry is whether a reasonable person in the plaintiff's position would have foreseen the danger, not whether the particular plaintiff knew or should have known that the condition was hazardous." *Slaughter [v. Blarney Castle Oil Co.*,] 281 Mich. App [474] at 479 [2008]. Plaintiff's testimony, although unrebutted and viewed in the light most favorable to her, does not establish a genuine question of fact whether an average person of ordinary intelligence and perceptiveness would, in the exercise of ordinary care, have discovered and avoided the pallet.

Plaintiff describes the pallet as "hidden" and "camouflaged." The available evidence contradicts these descriptors. In fact, it is known that the pallet contrasted with the floor and the area was brightly illuminated. The pallet was merely around a corner. Drawing an inference favorable to plaintiff, we presume that the shelving making up the aisles was stocked in such a way that they could not be seen through. However, we agree with defendant's argument that it is impossible for the pallet not to have been visible to a person approaching the end of the aisle before reaching the pallet itself. The pallet stuck out three feet—halfway across the intersecting aisle. If the pallet was directly at the corner of the intersection, some of it would have been visible before reaching the corner itself. If the pallet was far enough back from the corner that it could not be seen prior to turning, then it would have been far enough away for a person to see it and stop after turning. There were no other obstructions to viewing it, nor would it have in any way been indistinguishable from its background. In short, the only possible way a reasonable person would fail to have noticed the pallet is that the person was not exercising ordinary care. And because plaintiff conceded that she could easily have avoided the pallet if she had seen it, there are no "special aspects" to the situation.

2011 WL 6757480, at *1-2. *See also Morris v. Home Depot*, No. 17-cv-10063, 2018 WL 2463115, at *2 (E.D. Mich. June 1, 2018) (finding that light-colored wooden pallet that was lying in the center of a concrete walkway was open and obvious despite

plaintiff's claim that the pallet was obscured by a display of patio furniture) (Cox, J.) (citing *LaFontaine, supra*); *Miller v. Bass Pro Shop Outdoor World*, No. 263364, 2005 WL 3556164, at *1-2 (Mich. Ct. App. Dec. 29, 2005) (finding that base of a display sign was open and obvious and rejecting any "distracted customer" theory, confirming that the special aspects doctrine is "the sole exception to the open and obvious doctrine"); *Crute v. Meijer Inc.*, No. 214272, 2000 WL 33405972, at *1-2 (Mich. Ct. App. Oct. 10, 2000) (finding that the aisle end cap display that was elevated two to three inches above the floor was open and obvious where plaintiff testified that she would have noticed it had she been looking down at the floor); *Bates v. Burlington Coat Factory Warehouse of Auburn Hills, Inc.*, No. 249749, 2004 WL 2624867, at *2-3 (Mich. Ct. App. Nov. 18, 2004) (finding that dangers presented by end cap display that was partially covered by a rug were open and obvious where there was a contrast between the display and the floor and where plaintiff's daughters had successfully rounded the corner without tripping over the end cap just moments before the plaintiff tripped and fell and where the defendant had no other incidents of customers falling involving the end caps). *But see Gorsline v. Speedway, LLC*, No. 16-cv-13002, 2017 WL 4098828, at *4-5 (E.D. Mich. Sept. 15, 2017) (finding genuine issue of material fact for trial where the display of water cases over which plaintiff tripped and fell was not open and obvious given the small dimensions and

location of the display, finding that the water display was much shorter than the pallette in *LaFontaine*, and much smaller than the large end cap in *Freeman*, and was located in the middle of the store aisle rather than on an end cap); and *Foust v. Home Depot USA, Inc.*, 166 F. Supp. 3d 881, 888-89 (E.D. Mich. 2016) (acknowledging, as the Sixth Circuit did in *Wimberly* and *Cudney*, that under Michigan law there was no "customer distraction" exception to the open and obvious rule in the retail environment, but finding a question of fact as to whether metal strips protruding from a conversion display cart that were similar in color to the floor were open and obvious).

The facts of this case fall closer in line with *Quinto*, *Freeman, LaFontaine*, and *Morris*. There is no dispute that the water display cart was a distinct blue color and the floor beneath the cart where Plaintiff tripped was a light grey color. (ECF No. 24-2, Def.'s Mot. Ex. 2, PgID 258-59.) These photographs also demonstrate that the cart extends a good distance laterally into the aisle from which the plaintiff approached and could be seen from some distance by the Plaintiff as she walked down the aisle toward the cart. Plaintiff argues that the fact that the still photos have the display cart fully stocked suggests some effort on Defendant's part to misrepresent the actual condition of the display cart at the time of Plaintiff's fall. But the video evidence clearly depicts the precise condition of the display cart at the time of the fall so the

fact that the cart is fully stocked in the still photographs is of no moment. The evidence is undisputed that the water display cart is permanent and was not moved from its permanent position at the end of the aisle between the time that Plaintiff fell and the time that the photographs were taken. Whether the display cart was fully or partially stocked at the time of Plaintiff's fall has no bearing on its location relative to the end of the aisle.

The water display cart is very large – 1.42 feet wide and 2.75 feet long, with 8 inch wheels and a 3.42 foot high handle. (Spell Dep. 41-42; ECF No. 24-2, Photos.) The video depicts several other patrons, one coming from the very same direction and down the very same aisle as the Plaintiff just minutes after Plaintiff falls, easily navigate around the display cart (despite the fact that the end portion does not have water stacked on it). And Plaintiff testified that had she been looking at the ground in front of her, she would have seen the cart and not have tripped over the corner. There is no genuine issue of material fact that even if the display cart posed a danger, it was open and obvious to a casual observer exercising reasonable care and was easily bypassed, as the undisputed video evidence establishes.

As mentioned *supra*, however, Plaintiff's response indicates that she may be conceding that the danger posed by the display cart was open and obvious but she argues that the special aspects exception applies to take the display cart out of the

protection of the open and obvious doctrine because the display cart was not fully stocked with water, making the end portion of the display cart farthest from the aisle's end more difficult to see when rounding the corner. The Court concludes that simply having the most distant edge of the display cart without product does not "give rise to a uniquely high likelihood of harm or severity of harm," such as would call into play the special aspects exception. Obviously, the display cart could not be immediately restocked every time a customer took the last case off end of the display – partially-stocked display carts are a common occurrence in the retail setting. The fact that the display cart was partially stocked at the exact moment of Plaintiff's fall does not "impose an unreasonably high risk of severe harm" from tripping over the display. The fact that the cart was not stocked with water at its outermost end did not change the distance that Plaintiff would fall to the ground, or the nature of the injuries she was likely to sustain from a trip and fall over the cart, such as would increase the likelihood of harm such that Plaintiff faced a risk similar to that posed by falling into a 30' deep pit. *See Wellman v. Wal-Mart Stores*, 192 F. Supp. 2d 767 (W.D. Mich. 2002) (McKeague, J.) (finding that a 1" chain dangling on an aisle floor over which the plaintiff tripped and fell was open and obvious and did not pose a reasonably foreseeable risk of severe harm but was "more akin to the common or ordinary parking lot pothole [and] unlike a 30-foot-deep pothole" and posed little risk of severe

injury). "Unlike falling an extended distance . . . 'it cannot be expected that a typical person tripping on a pothole and falling to the ground would suffer severe injury'" *Bates*, 2004 WL 2624867, at *3 (quoting *Lugo*, 464 Mich. at 520). "[E]ven if this end cap was as dangerous as plaintiff claims it was, the risk it creates does not rise to the level of a 'substantial risk of death or severe injury.'" *Id.* (quoting *Lugo*, 464 Mich. at 518.)

And "because plaintiff conceded that she could easily have avoided the [cart] if she had seen it, there are no 'special aspects' to the situation." *LaFontaine*, 2011 WL 6757480, at *2. As the Michigan Supreme Court explained in *Hoffner*:

> The "special aspects" exception to the open and obvious doctrine for hazards that are effectively unavoidable is a limited exception designed to avoid application of the open and obvious doctrine only when a person is subjected to an unreasonable risk of harm. Unavoidability is characterized by an inability to be avoided, an inescapable result, or the inevitability of a given outcome. Our discussion of unavoidability in *Lugo* was tempered by the use of the word "effectively," thus providing that a hazard must be unavoidable or inescapable in effect or for all practical purposes. Accordingly, the standard for "effective unavoidability" is that a person, for all practical purposes, must be required or compelled to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a choice whether to confront a hazard cannot truly be unavoidable, or even effectively so.

492 Mich. at 468-69. Here, not only did Plaintiff concede in her deposition that she could have avoided the cart had she seen it, but the video evidence actually depicts numerous shoppers easily navigating around the very same partially-stocked display

cart within moments of Plaintiff's fall, one of whom approached the display coming down the very same aisle from which the Plaintiff approached, turning the very same corner in the very same direction as the Plaintiff had – and without incident. *See Bates*, 2004 WL 2624867, at *2 (observing that a person of ordinary intelligence would have been able to discover the danger posed by an end cap, as evidenced by the fact that "plaintiff's own daughters rounded this corner only seconds before her without incident").

As United States District Judge Sean Cox observed in *Morris*, *supra*, on similar facts:

> Finally, the pallet did not present an extremely high risk of severe harm such that the open and obvious doctrine is inapplicable. *See Hoffner*, 821 N.W.2d at 95. The pallet was not unreasonably dangerous. Plaintiff has not identified–nor do the undisputed facts show–anything unique or uncommon about the pallet that she tripped over. Indeed, the pallet is more akin to an ordinary pothole than an unguarded thirty foot deep pit in the middle of a parking lot, the former of which, of course, is not unreasonably dangerous. *See Lugo v. Ameritech Corp., Inc*., 629 N.W.2d 384, 387-88 (Mich. 2001). Nor was any danger posed by the pallet "effectively unavoidable." "[S]ituations in which a person has a choice whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Hoffner*, 821 N.W.2d at 99. That is the case here. Plaintiff was not compelled to enter the aisle in question, she chose to do so.

2018 WL 2463115, at *2. So too here. This large blue water display cart did not pose an unreasonable danger of severe injury or death, being more like an ordinary pothole than a 30-foot deep pit, nor was it unavoidable, as evidenced by the video depicting

several people safely navigating their way around the display and Plaintiff's own testimony that had she seen the end of the cart, she would have been able to avoid it. There is no genuine issue of material fact that the special aspects exception does not apply here.

Finally, Plaintiff offers the Affidavit of Robert Pachella, PhD, a Professor Emeritus of Psychology from the University of Michigan, whom Plaintiff appears to proffer as an expert on "human performance." Regardless of the reliability of the "science" presented in Dr. Pachella's Affidavit, his opinions on the subject of "human perception" are not relevant here and would not "help the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702. The only relevant inquiry here "is whether a reasonable person in plaintiff's position would have foreseen the danger, not whether the particular plaintiff knew or should have known that the condition was hazardous." *Slaughter v. Blarney Castle Oil Co.* 281 Mich. App. 474, 479 (2008). Michigan case law, and not Plaintiff's expert, determines the bounds of the reasonable person standard for purposes of the Court's analysis. And Dr. Pachella's opinions that an object six inches off the floor was *per se* imperceptible to the Plaintiff is in direct contradiction to several Michigan Supreme Court and Court of Appeals opinions finding that floor-level obstructions can indeed be, and often are, open and obvious. The Court declines to consider Dr. Pachella's Affidavit as it would

not be admissible at trial.

**IV.    CONCLUSION**

Reasonable minds could not differ in concluding that Plaintiff suffered injury as a result of an avoidable trip and fall over an open and obvious danger that posed no inherent threat of severe injury or unreasonably dangerous harm.  Plaintiff has failed to demonstrate genuine issues of material fact for trial.  Accordingly, Defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  August 8, 2019